# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **RICK MENDELSSOHN AND AMY** | § | |
| **BIRNBAUM, Individually and as** | § | |
| **attorneys in fact for J.M.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:20-cv-203** |
| | § | **Jury Trial** |
| **AUSTIN INDEPENDENT** | § | |
| **SCHOOL DISTRICT AND** | § | |
| **VINCENT WRENCHER, SR.,** | § | |
| | § | |
| **Defendants.** | § | |

## AUSTIN INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFF'S FIRST ORIGINAL COMPLAINT PURSUANT TO RULE 12(b)(1) and (6)

# TABLE OF CONTENTS

Table of Contents....................................................................................................ii

Table of Authorities............................................................................................iv

Nature and Stage of the Proceedings.................................................................1

Statement of Relevant Facts as Pled by J.M......................................................1

Statement of the Issues.......................................................................................2

Argument and Authorities..................................................................................3

    A.    Standard of Review...................................................................3

        1.    Rule 12(b)(1).........................................................3

        2.    Rule 12(b)(6).........................................................4

    B.    To the extent J.M.'s Title VI claim is based on his Jewish faith,
his claim must be dismissed because Title VI does not apply to
allegations of discrimination on the basis of religion...................4

    C.    J.M. fails to plead any factual allegations that would support a Title VI
claim based on his national origin..................................................5

    D.    Far from pleading a viable Title VI claim, J.M. pleads
he was discriminated and retaliated against because he made an
anti-Semitic joke............................................................................5

    E.    J.M. cannot state a viable Section 1983 claim against the District
because he fails to allege facts that would support a finding of
municipal liability.........................................................................6

        1.    J.M. fails to plead that his constitutional rights were violated
through the execution of an official policy enacted by AISD's
final policy-maker, the Board.............................................7

        2.    Even if J.M. had properly pled a specific Board action or inaction,
the allegations put forth by J.M. do not rise to the level of deliberate
indifference.........................................................................9

F.    J.M. fails to plead facts that would support a First Amendment claim ....... 12

    1.    J.M. fails to plead any factual allegations that would support a free exercise claim ......................................................................... 12

    2.    J.M.'s pleadings fail to allege facts that would support his petition claim ........................................................................................ 13

    3.    J.M. fails to plead facts that would support a First Amendment retaliation claim ........................................................... 13

G.    J.M. fails to plead facts that would support a Fourteenth Amendment claim tethered to his right to life, liberty, and the pursuit of happiness ...... 13

H.    J.M. fails to plead a viable right to public education claim ........................ 14

I.    J.M. fails to plead facts that would support his equal protection claim ...... 15

    1.    J.M. fails to identify a similarly-situated comparator treated differently by the District without a rational basis ............... 16

    2.    J.M. fails to allege facts supporting discriminatory intent .............. 16

J.    J.M. fails to plead facts that would support a civil conspiracy claim ......... 17

K.    J.M.'s state law claims are barred by the District's entitlement to governmental immunity and by his failure to state a claim .................... 18

    1.    The District is entitled to governmental immunity due to J.M.'s failure to comply with the TRFRA's mandatory and jurisdictional pre-suit notice requirement ............................................................. 19

    2.    J.M. fails to state a claim under Chapter 106 because he does not seek relief available under the statute ............................................... 20

PRAYER ......................................................................................................... 20

CERTIFICATE OF SERVICE ......................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*A.A. v. Needville Indep. Sch. Dist.*,
   611 F.3d 248 (5th Cir. 2010) ................................................................ 12

*Alabama State Fed'n of Teachers, AFL-CIO v. James*,
   656 F.2d 193 (5th Cir. 1981) ................................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................... Passim

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996) .................................................................. 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 4, 9

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ................................................................ 8

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ....................................................................... 10

*Den Norske Stats Oljeselskap As v. Heeremac VOF*,
   241 F.3d 420 (5th Cir. 2001) ................................................................ 3

*Doe v. Dallas Indep. Sch. Dist.*,
   153 F.3d 211 (5th Cir. 1998) .............................................................. 10

*Doe v. Silsbee Indep. Sch. Dist.*,
   402 F. App'x 852 (5th Cir. 2010) .......................................................... 16

*Doe v. Taylor Indep. Sch. Dist.*,
   15 F.3d 443 (5th Cir. 1994) ............................................................... 10

*Espinoza v. Farah Manuf. Co., Inc.*,
   414 U.S. 86 (1973) ......................................................................... 5

*Eugene v. Alief Indep. Sch. Dist.*,
   65 F.3d 1299 (5th Cir. 1995) ............................................................... 7

iv

*Fennell v. Marion Indep. Sch. Dist.*,
    804 F.3d 398 (5th Cir. 2015) ........................................................................ 11, 12

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ................................................................................. 4

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
    996 F.2d 745 (5th Cir. 1993) ................................................................................. 6

*Hartford Ins. Group v. Lou-Con, Inc.*,
    293 F.3d 908 (5th Cir. 2002) ................................................................................. 3

*Hilliard v. Ferguson*,
    30 F.3d 649 (5th Cir. 1994) .......................................................................... 17, 18

*I. L. v. Houston Indep. Sch. Dist.*,
    776 F. App'x 839 (5th Cir. 2019) ....................................................................... 10

*Jett v. Dallas Indep. Sch. Dist.*,
    7 F.3d 1241 (5th Cir. 1993) ................................................................................. 7

*Johnson v. Moore*,
    958 F.2d 92 (5th Cir. 1992) ...................................................................... 7, 8, 13

*Johnson v. Rodriguez*,
    110 F.3d 299 (5th Cir. 1997) .............................................................................. 17

*Lindquist v. City of Pasadena*,
    669 F.3d 225 (5th Cir. 2012) .............................................................................. 15

*McClendon v. City of Columbia*,
    305 F.3d 314 (5th Cir. 2002) ........................................................................ 10, 12

*McDonald v. Bd. of Election Com'rs*,
    394 U.S. 802 (1969) ............................................................................................ 8

*Mohamed v. Irving Indep. Sch. Dist.*,
    300 F. Supp. 3d 857 (N.D. Tex. 2018) ................................................................. 5

*Monell v. Dept. of Soc. Srvs. of the City of New York*,
    436 U.S. 658 (1978) ................................................................................... Passim

*Morgan v. Plano Indep. Sch. Dist.*,
724 F.3d 579 (5th Cir. 2013) ................................................................. 19

*Pedrozo v. Clinton*,
610 F. Supp. 2d 730 (S.D. Tex. 2009) ..................................................... 3

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ................................................................... 7

*Priester v. Lowndes Cnty.*,
354 F.3d 414 (5th Cir. 2004) ................................................................... 8

*Ricci v. Cleveland Indep. Sch. Dist.*,
No. 11-cv-02957, 2012 WL 2935200 (S.D. Tex. July 17, 2012) .......... 17

*Rivera v. Houston Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir. 2003) ........................................................ 7, 8, 11

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
411 U.S. 1 (1973) ................................................................................. 14

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
647 F.3d 156 (5th Cir. 2011) ........................................................... 10, 12

*Shinn v. College Station Indep. Sch. Dist.*,
96 F.3d 783 (5th Cir. 1996) ................................................................. 14

*Siegert v. Gilley*,
500 U.S. 226 (1991) ............................................................................. 17

*Stith v. City of Easton*,
No. 6:09-cv-38, 2010 WL 413051 (E.D. Tex. Jan. 27, 2010) .............. 16

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ............................................................................. 12

## STATE CASES

*Combs v. City of Webster*,
311 S.W.3d 85 (Tex. App.—Austin 2009, pet. denied) ................................. 14, 15

# FEDERAL STATUTES AND RULES

42 U.S.C. § 1985 ........................................................................................ 17

42 U.S.C. § 2000(d) ..................................................................................... 5

Fed. R. Civ. P. 9(c) ..................................................................................... 19

# STATE STATUTE

Tex. Civ Prac. & Rem. Code § 106.002 ....................................................... 20

Tex. Civ. Prac. & Rem. Code § 110.006 ...................................................... 19

## Nature and Stage of the Proceedings

Rick Mendelssohn and Amy Birnbaum filed suit on behalf of their now adult son, J.M., claiming that, as a result of his making an anti-Semitic joke, the Austin Independent School District (AISD or the District) and a District employee, Vincent Wrencher, Sr., violated his rights under Title VI of the Civil Rights Act of 1964, the First and Fourteenth Amendments to the United States Constitution, and Texas state law. *See generally*, Dkt. No. 1. AISD now moves to dismiss all of J.M.'s claims.

## Statement of Relevant Facts as Pled by J.M.

- J.M. is a former student of Anderson High School, within the Austin Independent School District, and is currently eighteen years of age. *See* Dkt. No. 1 at ¶¶ 1, 8, 25.

- J.M. is of Jewish heritage, descent, culture, and religion. *Id*. at ¶¶ 2, 25.

- While a student at Anderson High School, J.M. participated in the VEX Robotics Program and team. *Id*. at ¶¶ 1, 27. The Robotics team was supervised and counseled by Vincent Wrencher, Sr., the Robotics teacher at Anderson High School. *Id*. at ¶ 11. During the 2018-2019 school year, Wrencher was assisted by a University of Texas student, Robert Stephany, in a volunteer mentorship capacity. *Id*. at ¶¶ 2, 27.

- In November of 2018, J.M. saw a few coins on the ground and stated "Guess I should pick them up since I'm the Jew." *Id*. at ¶ 28. Stephany took offense to J.M.'s anti-Semitic "joke" and reported it to Wrencher. *Id*.

- In March of 2019, members of the Robotics team learned they qualified for the VEX World Championships, to be held at the end of April. *Id*. at ¶ 29. Wrencher announced that J.M. would not compete in the World Championships and would be removed from the team entirely, due to his anti-Semitic "joke." *Id*. at ¶¶ 29, 32.

- J.M.'s parents and J.M. met with Wrencher and school district officials, Principal Harrison and Vice Principal Biester, on numerous occasions regarding J.M.'s anti-Semitic "joke" and Wrencher's decision. *Id*. at ¶¶ 30-32, 35-36, 42.

1

- Principal Harrison decided that, since this was a singular incident, J.M. would be permitted to participate in the VEX World Championships and remain on the Robotics team for the remainder of the year, as well as for the following 2019-2020 school year. *Id.* at ¶¶ 31, 35-36, 43-45.

- Following this decision by Principal Harrison, Wrencher decided he would no longer supervise the VEX Robotics team, which met after school hours, and would no longer volunteer to transport the team's robots to the World Championships. *Id.* at ¶¶ 37, 40. The Robotics team still advanced to the quarterfinals of the World Championships. *Id.* at ¶ 41.

- Wrencher decided he would not be involved in the Robotics program for the 2019-2020 school year. *Id.* at ¶ 46. This did not prevent students from participating and competing as a team in the Robotics program at Anderson High School. *Id.* at ¶¶ 46-48. Rather, it required the parents to mentor the students themselves. *Id.* at ¶ 49.

- At some point, J.M. decided not to continue to participate in the Robotics team. *Id.* at ¶ 50.

### **Statement of the Issues**

1. Title VI does not apply to discrimination based on religion and, as such, J.M.'s Title VI claim must be dismissed.

2. J.M. does not plead any factual allegations that support a Title VI claim predicated on the basis of national origin.

3. J.M.'s own factual allegations negate his Title VI claim because he affirmatively pleads that any actions taken against him were taken because he made an anti-Semitic joke – not because of any protected characteristic.

4. J.M.'s federal constitutional claims must be dismissed due to his failure to plead any factual allegations that could support a finding of municipal liability.

5. J.M. fails to plead any facts that could support a claim under the First Amendment.

6. J.M. fails to plead any facts that could support his Fourteenth Amendment claim to life, liberty, and the pursuit of happiness.

7.     J.M.'s "right to a public education" claim must be dismissed because there is no right to a public education under the United States Constitution and, in any event, J.M. fails to plead facts that could support a claim based on the denial of a right to a public education.

8.     J.M. fails to plead facts that would support a claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

9.     J.M. fails to plead a viable conspiracy claim under 42 U.S.C. § 1985.

10.    J.M.'s state law claims are barred by the District's governmental immunity and J.M.'s failure to state a claim.

## Argument and Authorities

**A.     Standard of Review.**

*1.     Rule 12(b)(1).*

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's exercise of subject matter jurisdiction over a case. *See Den Norske Stats Oljeselskap As v. Heeremac VOF*, 241 F.3d 420, 424 (5th Cir. 2001). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. A court must accept all factual allegations in the plaintiff's complaint as true, and the burden of establishing a federal court's subject matter jurisdiction rests with "the party seeking to invoke it." *See Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 733 (S.D. Tex. 2009) (citing to *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)).

2.      *Rule 12(b)(6).*

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level…" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

The Supreme Court in *Iqbal* explained that *Twombly* illustrates the applicable "two-pronged approach" for determining whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679. A court must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. Upon identifying the well-pleaded factual allegations, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

**B.      To the extent J.M.'s Title VI claim is based on his Jewish faith, his claim must be dismissed because Title VI does not apply to allegations of discrimination on the basis of religion.**

J.M. obliquely claims that he was discriminated against on the basis of his ". . . Jewish heritage, descent, culture, and religion." *See* Dkt. No. 1 at ¶ 2 (omission added), *see*

4

*also* ¶ 94 (alleging discrimination on the basis of J.M.'s membership in a protected class). Courts uniformly recognize that ". . . Title VI does not proscribe discrimination based on religion." *See, e.g.*, *Mohamed v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 895 (N.D. Tex. 2018) (omission added); *see also* 42 U.S.C. § 2000(d) (prohibiting discrimination "on the grounds of race, color, or national origin."). Because J.M.'s Title VI claim rests on his Jewish faith, that is the end of J.M.'s Title VI claim.

## C.    *J.M. fails to plead any factual allegations that would support a Title VI claim based on his national origin.*

J.M.'s claims are not precisely drawn but, to the extent he claims he was discriminated against on the basis of national origin, he has failed to plead facts to support a national origin claim. *See generally*, Dkt. No. 1. That is because the "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Manuf. Co., Inc.*, 414 U.S. 86, 88 (1973) (alteration added, internal quotations in original). And J.M. pled no factual allegations identifying discrimination based on a country either he, or his ancestors, were born in. *See generally*, Dkt. No. 1. The absence of allegations related to J.M.'s ancestry is fatal to his claim.

## D.    *Far from pleading a viable Title VI claim, J.M. pleads he was discriminated and retaliated against because he made an anti-Semitic joke.*

Not only does J.M. fail to plead he was a member of a class protected under Title VI, his own allegations negate any inference that he was targeted due to his membership in a protected class. In fact, J.M.'s complaint makes clear that he believes he was targeted by Robert Stephany, a Robotics volunteer, and Wrencher because J.M. made a comment

Stephany took to be offensive to members of the Jewish faith, saying to fellow students, when he saw coins on the ground that, "Guess I should pick them up since I'm the Jew." *See, e.g.*, Dkt. No. 1 at ¶ 2 (acknowledging that "Robert Stephany, a Volunteer Mentor with the Robotics program apparently took great exception to this joke and reported it to Mr. Wrencher."). To the extent that J.M.'s allegations are true (and AISD acknowledges that the Court must treat them as such at this stage), he has affirmatively pled that any treatment he was subjected to by Stephany and Wrencher was based on his comment – that he acknowledges that Stephany found offensive – and not any protected characteristic. In other words, J.M. has made clear that nothing he experienced was based on the fact that he is Jewish, it was based on a comment he made that was perceived to be offensive.

**E.**    ***J.M. cannot state a viable Section 1983 claim against the District because he fails to allege facts that would support a finding of municipal liability.***

The Supreme Court held in *Monell v. Department of Social Services of the City of New York* that local governments can only be held liable for constitutional wrongs inflicted on their citizens pursuant to official policy. 436 U.S. 658, 694 (1978) (holding "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752-53 (5th Cir. 1993). Under *Monell* and its progeny, municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of

constitutional rights whose "moving force" is the policy or custom. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

As stated by the Fifth Circuit in *Piotrowski v. City of Houston*, "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by employees will almost never trigger liability." 237 F.3d 567, 578 (5th Cir. 2001) (internal citations omitted and insertion added). Moreover, a school district cannot be held liable under Section 1983 for an employee's alleged misconduct based on the theories of *respondeat superior* or vicarious liability. *See Monell*, 436 U.S. at 690-94; *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992).

Under Texas law, final policy-making authority in a public school district, such as AISD, rests exclusively with the district's board of trustees. *See Rivera*, 349 F.3d at 247; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (stating the final policy-maker for school districts is the board of trustees). Simply because an employee acts as a decision-maker does not mean that employee is a policymaker for the district. *See Jett*, 7 F.3d at 1246; *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995).

> 1.    *J.M. fails to plead that his constitutional rights were violated through the execution of an official policy enacted by AISD's final policy-maker, the Board.*

Simply put, J.M. is required to plead *factual* allegations that could show that the actions of the Board deprived him of his constitutional rights, yet he does not. *See generally*, Dkt. No. 1; *see also Piotrowski*, 237 F.3d at 578. In fact, J.M. fails to attribute any of the actions he complains of to any member of the AISD Board. *See generally*, Dkt.

7

No. 1. Instead, he focuses on the actions of a District volunteer and a single District employee. *Id*. J.M., thus, is attempting to hold the District liable for alleged actions of a staff member of Anderson. *Id*. But this is the very sort of *respondeat superior* liability that *Monell* prohibits. *See Monell*, 436 U.S. at 690-94; *Johnson,*958 F.2d at 93. Further, to the extent that J.M. complains of actions by non-state actors, i.e. other parents or students, this cannot serve as the basis for municipal liability, unless the private actor was "a willful participant in joint activity with the State or its agents," which J.M. does not plead. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). These failings alone warrant dismissal of J.M.'s Section 1983 claim.

Moving beyond his impermissible attempt to impose vicarious liability on AISD, in his complaint, J.M. affirmatively asserts that the Board, implemented express, written policies barring discrimination. Dkt. No. 1 at ¶ 21. J.M. never challenges the constitutionality of the Board's policies. *See generally*, Dkt. No. 1. As such, the only fact J.M. asserts against the Board in his complaint is the fact that the Board enacted facially constitutional policies. *See McDonald v. Bd. of Election Com'rs*, 394 U.S. 802, 809 (1969) ("Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them."); *Alabama State Fed'n of Teachers, AFL-CIO v. James*, 656 F.2d 193, 195 (5th Cir. 1981). The existence of facially constitutional policies simply cannot be the moving force of a constitutional injury. *See Rivera*, 349 F.3d at 247. Further, J.M. does not plead that

there is a district-wide policy or pattern of non-enforcement of Board policies. *See generally*, Dkt. No. 1. Thus, these allegations are insufficient to state a claim of municipal liability against the District.

At most, J.M. pleads that the District (1) ignores Title VI jurisprudence, (2) failed to train staff, and (3) failed to supervise staff. Dkt. No. 1 at ¶¶ 77-80. Yet, J.M. fails to plead any facts at all that would support these allegations. *See generally*, Dkt. No. 1. That is fatal to his claim.

As the Supreme Court held in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and that a complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). And this is exactly what J.M. offers – mere conclusions and naked assertions devoid of factual enhancement. Thus, none of J.M.'s conclusory allegations against the Board are entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. As such, J.M.'s Section 1983 claim against the District is legally insufficient and should be dismissed under Rule 12(b)(6).

2.    *Even if J.M. had properly pled a specific Board action or inaction, the allegations put forth by J.M. do not rise to the level of deliberate indifference.*

Even if the Court were to treat J.M.'s conclusory pleadings about the Board as factual allegations entitled to the assumption of truth (and it should not), his claims still fail as a matter of law. Specifically, J.M. alleges that the District is liable under Section 1983 for (1) failing to investigate allegations of bullying or harassment based on racial animus; (2) failing to supervise staff; and (3) failing to train staff on how to address complaints

based upon racial, national origin, or cultural heritage discrimination. *See* Dkt. No. 1 at ¶¶ 78-80. This is not enough. And that is because the District can only be held liable under a failure to train or supervise theory if the actions or inactions of the District's policy maker – i.e. the Board – amount to deliberate indifference to J.M.'s constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-53 (5th Cir. 1994).

"To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety." *See McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (internal quotations omitted). The Fifth Circuit has made it clear that deliberate indifference is a high burden, equivalent to a lesser form of intent. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998); *Taylor*, 15 F.3d 443; *I. L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011). J.M. cannot make this showing. In fact, he negates it.

J.M. pleads that AISD "has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from *Discrimination, Harassment & Retaliation* (FFH Local) which address, among other things, bullying, harassment, and assault." Dkt. No. 1 at ¶ 21. He further pleads that the Board Policy FFH (LOCAL) sets out definitions of discrimination and harassment based upon race and nationality, provides information on the investigatory and appeal process, and prohibits retaliation against anyone who reports such discrimination. *Id.* J.M. also notes that Board Policy DMA (LEGAL) contains a list of training subjects required of staff, although he pleads that there

is no specific training for cultural sensitivity issues, implicit bias, or unconscious bias. *Id.* at ¶ 24.

The fact that J.M. cites to policies implemented by the Board that specifically address discrimination and harassment based on race and national origin, as well as mandate training on such discrimination and harassment, negates any inference that AISD's Board acted with deliberate indifference to his constitutional rights. *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (noting the existence of Board policy prohibiting racial discrimination, bullying, and harassment when finding the district was not deliberately indifferent) (comparing *Rivera*, 349 F.3d at 250).

Further, to the extent J.M. argues the Board failed to ensure its own policies were adhered to by District employees, and was thus deliberately indifferent, he fails to allege any facts that would show the Board knew of, or condoned, the alleged behavior. *See id.* ("Thus, even assuming the alleged customs, policies, and failures to train existed among Marion ISD employees, '[t]here is no evidence that the Board knew of this behavior or condoned it.'") (citing to *Rivera*, 349 F.3d at 250); *Rivera*, 349 F.3d at 249-50 ("Taking the Parents' evidence that certain teachers did not adequately respond to 'rule infractions involving gang activity' or the wearing of 'gang wear' as true, it only demonstrates that those teachers were acting in violation of Board policy designed to combat gang activities. There is no evidence that the Board knew of this behavior or condoned it. In fact, its official policies . . . suggest a policy that was, at minimum, antagonistic to gang related activity.").

Although J.M. pleads the buzz words "deliberate indifference," he never pleads that the Board ever had knowledge of the allegations he asserts in his complaint. *See generally*,

Dkt. No. 1. The Board cannot be deliberately indifferent to that which it does not know. *McClendon*, 305 F.3d at 326 n.8; *see also Fennell*, 804 F.3d at 411 (citing *Sanches*, 647 F.3d at 165). As such, J.M. fails to plead facts that would allow the inference that the Board acted with deliberate indifference towards his constitutional rights, and his Section 1983 claim against the District should be dismissed under Rule 12(b)(6).

**F.**     ***J.M. fails to plead facts that would support a First Amendment claim.***

J.M. asserts three separate First Amendment claims: (1) a free exercise claim, (2) a petition for redress of grievances claim, and (3) a retaliation claim. *See* Dkt. No. 1 at ¶¶ 82-84. Each claim fails on the merits.

> **1.**     *J.M. fails to plead any factual allegations that would support a free exercise claim.*

The free exercise clause of the First Amendment prohibits the government from substantially burdening a person's exercise of religion unless the government can show that the burden is in furtherance of a compelling governmental interest and is the least restrictive burden possible. *See A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 258 (5th Cir. 2010) (citing to *Wisconsin v. Yoder,* 406 U.S. 205, 221-29 (1972)). Thus, J.M. must allege that the District burdened his exercise of religion. J.M., who complains that he was punished for making an anti-Semitic joke and essentially forced out of robotics club, fails to identify any action of the District which impinged on his free exercise of religion. *See generally*, Dkt. No. 1. In short, J.M.'s free exercise claim is baseless.

2.      *J.M.'s pleadings fail to allege facts that would support his petition claim.*

While J.M. alleges, in conclusory fashion, that the District failed to timely respond to grievances filed on his behalf, he fails to plead any factual allegations related to this claim. *Compare* Dkt. No. 1 at ¶ 83 (conclusory allegations), *with* Dkt. No. 1 *generally* (complete absence of allegations related to grievances). As such, he has failed to state a claim under the First Amendment for a violation of his right to petition for redress of grievances. *Iqbal*, 556 U.S. at 678.

3.      *J.M. fails to plead facts that would support a First Amendment retaliation claim.*

J.M. claims, once again, in conclusory fashion, that he was retaliated against due to his parent's advocacy on his behalf. Dkt. No. 1 at ¶ 84. This claim suffers from the same failing as his petition claim – he fails to plead any factual allegations to support it – and must, therefore, be dismissed for failure to state a claim. *See* Part F.2, *supra*. Not only that, but the only allegedly retaliatory action that J.M. identifies are actions purportedly taken by Wrencher. *See* Dkt. No. 1 at ¶¶ 40-51 (factual allegations falling under the heading "WRENCHER STARTS TO RETALIATE") (capitalization in original). As explained above, the District cannot be held vicariously liable for the actions of an employee. *See Monell*, 436 U.S. at 690-94; *Johnson,* 958 F.2d at 93. Thus, J.M. has failed to state a First Amendment retaliation claim against the District.

## G.     *J.M. fails to plead facts that would support a Fourteenth Amendment claim tethered to his right to life, liberty, and the pursuit of happiness.*

In conclusory fashion, J.M. asserts that the District violated his Fourteenth Amendment rights to life, liberty, and the pursuit of happiness. *See* Dkt. No. 1 at ¶ 85. This

claim is frivolous. According to J.M.'s pleadings, he is alive and free. *See generally*, Dkt.

No. 1. He cannot, therefore, credibly claim that AISD deprived him of his life or his liberty.

What is more, J.M. fails to plead any facts that could support a reputational liberty interest

claim. *See generally*, Dkt. No. 1. And the right to happiness is simply not actionable. *See*

*Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996), *cert. denied*,

96 F.3d 783 (1997) (explaining that ". . . a constitutional violation does not occur every

time someone feels they have been wronged or treated unfairly.") (omission added).

**H.     J.M. fails to plead a viable right to public education claim.**

J.M. claims that he was denied his right to a public education under the United States

Constitution. *See* Dkt. No. 1 at ¶¶ 86-87. Not only does J.M. fail to plead any facts showing

that he was denied a public education, there simply is no right to a public education under

the federal constitution and, as such, this claim is baseless. *San Antonio Indep. Sch. Dist.*

*v. Rodriguez*, 411 U.S. 1, 33-39 (1973) (holding that there is no general right under the

Constitution to a public education). Without a cognizable right to a public education, J.M.

cannot state a claim for the denial of his non-existent right.

J.M.'s claim that he was denied his right to a public education under the Texas

constitution fares no better. *See* Dkt. No. 1 at ¶¶ 86-87. That is because J.M. fails to identify

any facts showing that he was denied a public education within the meaning of the Texas

Constitution. *See generally*, Dkt. No. 1. And, having failed to plead facts that would

support his claim under the Texas Constitution, J.M. has not defeated the District's

entitlement to governmental immunity to his state law claim, which deprives this Court of

subject matter jurisdiction over his claim. *See, e.g.*, *Combs v. City of Webster*, 311 S.W.3d

85, 91-93 (Tex. App.—Austin 2009, pet. denied) (explaining that a governmental entity remains immune to a claim under the Texas Constitution if the plaintiff does not plead a viable claim).

## I.      *J.M. fails to plead facts that would support his equal protection claim.*

J.M.'s equal protection claim is based on the fact that he believes that, while he was punished for making an anti-Semitic joke, other students were not punished for making derogatory statements about members of different protected classes. *See* Dkt. No. 1 at ¶ 90. J.M. then reasons that he was punished, while other students were not, because he is Jewish. *See id*. There is some irony in this as J.M. seems to be suggesting that, because, other students make derogatory statements, he should have a license to make anti-Semitic jokes. In any event, whatever thinking underlays his claim, it fails because J.M. fails to plead facts supporting the essential elements of his claim.

In order to plead his equal protection claim J.M. must allege: (1) that he was treated differently from similarly-situated members of the unprotected class; (2) the different treatment was intentionally discriminatory; and (3) there is no rational basis for the different treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). Even assuming J.M. is considered a member of a protected class, due to his Jewish heritage, his claim still fails.

     1.     *J.M. fails to identify a similarly-situated comparator treated differently by the District without a rational basis.*

To be similarly situated for equal protection purposes, the comparator must be "nearly identical" in all relevant respects. *Stith v. City of Easton*, No. 6:09-cv-38, 2010 WL 413051, at *4 (E.D. Tex. Jan. 27, 2010) (Schneider, J.) (holding that the plaintiff failed to allege a *prima facie* Section 1983 equal protection claim). J.M.'s conclusory allegations fail to identify any similarly-situated comparator treated differently than he was. *See generally*, Dkt. No. 1. Rather, J.M. alleges that he was treated differently than "other students." Dkt. No. 1 at ¶ 90. As such, J.M. has failed to allege an equal protection claim.

     2.     *J.M. fails to allege facts supporting discriminatory intent.*

To plead a viable equal protection claim, J.M. is required to allege discriminatory intent or purpose. *Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 854-55 (5th Cir. 2010) (affirming Rule 12(b)(6) dismissal of equal protection claim due to failure to plead the essential elements of a viable equal protection claim). J.M. fails to plead this essential element. *See generally*, Dkt. No. 1. Nor does J.M. allege sufficient factual matter to give rise to a plausible right to relief on an equal protection claim. *See id.*; *Iqbal*, 556 U.S. at 677.

Here, J.M. makes general allegations of his unfair treatment in comparison to other unnamed students; however, J.M. fails to identify any statement or action that demonstrates an intent harbored by the District to discriminate against him based on his Jewish religion. *See generally*, Dkt. No. 1. In other words, even if J.M.'s allegations of unfair treatment are true, there are no facts showing that the unequal treatment stemmed from discriminatory

intent as opposed to some other legitimate reason – like attempting to eliminate anti-Semitism. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) ("[D]isparate impact alone" is not enough; rather, "a party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury.") (internal quotations omitted); *see also Ricci v. Cleveland Indep. Sch. Dist*., No. 11-cv-02957, 2012 WL 2935200, at *14 (S.D. Tex. July 17, 2012) (Ellison, J.) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)) ("Where the critical issue is one of subjective motive . . . the 'plaintiff must put forward specific, nonconclusory factual allegations' to establish the alleged improper motive.").

**J.     *J.M. fails to plead facts that would support a civil conspiracy claim.***

J.M. also alleges he was the victim of a civil conspiracy to violate his rights in violation of 42 U.S.C. § 1985. *See* Dkt. No. 1 at ¶ 91. In order to state a claim under Section 1985, "… a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir. 1994).

According to J.M., the conspiracy was made up of District staff members, a District volunteer, and unnamed parents. *See* Dkt. No. 1 at ¶ 91. J.M.'s conspiracy claim fails for several reasons. First, J.M.'s claim fails because he cannot show that there was a conspiracy involving two or more people. *See* 42 U.S.C. § 1985. That is because, under the intra-corporate conspiracy doctrine, a school district and its agents are treated as one

17

person. *Hilliard,* 30 F.3d at 652. J.M. affirmatively pleads that all of the alleged conspirators – except the unnamed parents – are agents of the defendant school district. *See* Dkt. No. 1 at ¶ 91. Under *Hilliard,* that is the end of the conspiracy claim. And J.M.'s cannot rely on his conclusory allegation about unnamed parents to save his claim. That is because J.M. fails to plead any factual allegations that suggest that any parent (named or unnamed) participated in a conspiracy targeting him. Accordingly, J.M.'s claim that unnamed parents conspired against him is not a factual allegation entitled to the assumption of truth and, as such, may be disregarded by the Court. *Iqbal*, 556 U.S. at 678. That leaves an alleged civil conspiracy made up of District employees. And that claim is barred by the intra-corporate conspiracy doctrine. *Hilliard,* 30 F.3d at 652.

Second, J.M. cannot satisfy any other element of his claim. That is because, as explained above, each of J.M.'s civil rights claims fail on the merits. *See* Parts B. – I., *supra*. Without an underlying civil rights violation or actions taken to further a conspiracy to violate his rights, J.M.'s civil conspiracy claim fails. *Hilliard,* 30 F.3d at 652.

**K.     *J.M.'s state law claims are barred by the District's entitlement to governmental immunity and by his failure to state a claim.***

Almost as an afterthought, J.M. asserts two Texas state law claims under Chapters 106 and 110 to the Texas Civil Practice and Remedies Code. *See* Dkt. No. 1 at ¶¶ 99-100. Chapter 110 is the Texas Religious Freedom Restoration Act (TRFRA) and Chapter 106 is a state law prohibition on national origin discrimination. Both claims fail.

> 1.    *The District is entitled to governmental immunity due to J.M.'s failure to comply with the TRFRA's mandatory and jurisdictional pre-suit notice requirement.*

Before J.M. could file a lawsuit against the District alleging a violation of Section 110.003, he was statutorily required to give the District 60-days pre-suit notice of his claim by certified mail, return receipt requested. Tex. Civ. Prac. & Rem. Code § 110.006. The Fifth Circuit has squarely addressed the application of Section 110.006 and held that it is a mandatory and jurisdictional prerequisite to suit. *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582-88 (5th Cir. 2013). As such, a plaintiff's failure to strictly comply with Section 110.006's notice requirement deprives the court of subject matter jurisdiction over a Section 110.003 claim. *Id.*

Review of J.M.'s complaint establishes that he failed to plead, as required by Federal Rule of Civil Procedure 9(c), that all conditions precedent to suit have been satisfied. Fed. R. Civ. P. 9(c). Specifically, he did not plead that he complied with Section 110.006's notice requirement. *See generally*, Dkt. No. 1. Accordingly, because J.M. failed to plead facts invoking this Court's subject matter jurisdiction, his state law claim under Chapter 110 is barred by the District's entitlement to governmental immunity from suit and should be dismissed pursuant to Rule 12(b)(1) and (6). *Morgan*, 724 F.3d at 587-88 (explaining that a school district is entitled to governmental immunity when a plaintiff fails to strictly comply with Section 110.006's notice requirement).

19

> 2.    *J.M. fails to state a claim under Chapter 106 because he does not seek relief available under the statute.*

J.M. fails to state a claim under Chapter 106 because he does not seek any relief authorized by Chapter 106. Specifically, Chapter 106 exclusively authorizes a suit for ". . . preventive relief, including a permanent or temporary injunction, a restraining order, or any other order." Tex. Civ. Prac. & Rem. Code § 106.002 (omission added). J.M. seeks none of these things. *See* Dkt. No. 1 at ¶ 107. Instead, because he seeks only money damages, he fails to state a claim under Chapter 106 on which relief can be granted. Tex. Civ. Prac. & Rem. Code § 106.002.

## **Prayer**

For the above reasons, Austin Independent School District respectfully requests that this Court grant its motion to dismiss and dismiss all of J.M.'s claims against it with prejudice.

20

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

_____
CLAY T. GROVER
Attorney-in-Charge
State Bar No. 08550280
Fed. I.D. No. 15064
Email:  cgover@rmgllp.com
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
Email:  jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No. 3227731
Email:  ademmler@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:   713/960-6000
Facsimile:   713/960-6025

ATTORNEYS FOR AUSTIN INDEPENDENT
SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Martin J. Cirkiel
(*Via Email:* marty@cirkielaw.com)

_____
Attorney for Austin
Independent School District